**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1562-18T1

440 COMPANY-CARRIAGE
HOUSE, LP,

     Plaintiff-Respondent,

v.

ZONING BOARD OF
ADJUSTMENT FOR THE
BOROUGH OF PALISADES PARK,

     Defendant-Respondent,

and

BERKELEY PALISADES PARK, LLC,

     Defendant-Appellant.

Argued November 13, 2019 – Decided January 22, 2020

Before Judges Yannotti, Hoffman, and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0123-18.

Brian M. Chewcaskie argued the cause for appellant (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Brian

M. Chewcaskie, of counsel and on the briefs; Jessica V. Henry, on the briefs).

Gerald R. Salerno argued the cause for respondent 440 Company-Carriage House, LP (Aronsohn Weiner Salerno & Kaufman, PC, attorneys; Gerald R. Salerno, on the brief).

Albert H. Birchwale argued the cause for respondent Zoning Board of Adjustment for the Borough of Palisades Park (Testa & DeCarlo, attorneys; Diane T. Testa, on the brief).

PER CURIAM

Defendant Berkeley Palisades Park, LLC (Berkeley) appeals the October 22, 2018 order vacating the decision of defendant Zoning Board of Adjustment for the Borough of Palisades Park (the Board) to grant use and bulk variances and final site plan approval for the construction of a residential complex. The trial court vacated the Board's approval of Berkeley's application after determining the Board arbitrarily modified the application without justification. We affirm.

Berkeley filed an application with the Board in March 2016 seeking the approval of a multi-family residential high-rise building comprised of seventeen stories – fourteen residential floors above three levels of parking in addition to three parking levels below grade. As a high-density apartment building, the project was designated for affordable housing. The proposed building would

have 154 residential units, 180 parking spaces and would be 175 feet tall. Plaintiff owns the Carriage House, an eighteen-story residential high-rise building in Fort Lee, about 200 feet away from Berkeley's property.

Four variances were required for approval: 1) a "d(1)" use variance because under the New Jersey Residential Site Improvement Standards, N.J.A.C. 5:21-1.1 to -8.1, the property is classified as a high-rise residential building; 2) a "d(5)" density variance because the applicable ordinance permits 64 units and Berkeley wanted to build 154;[1] 3) a "d(6)" height variance because Berkeley sought to construct a seventeen-story building, and eight stories is the maximum under the ordinance;[2] and 4) a "c(1)" variance because the application specified a zero foot front yard setback when the ordinance required fifteen feet.[3]

Although the property is in Palisades Park, due to wetlands, topography and road layout, it cannot be accessed through that town. Therefore, Palisades Park had previously entered into an agreement with the neighboring town – Fort Lee – to access the property via a road located in Fort Lee.

---

[1]  Borough of Palisades Park Municipal Ordinance § 300-9.1(E)(1)(a).

[2]  Id. at § 300-9.1(D)(2)(a).

[3]  Id. at § 300-9.1(F)(1)(a).

In response to Berkeley's application, the Board conducted nine public hearings between October 2016 and October 2017. The site plan and application were amended several times during the course of the hearings; both parties produced expert testimony.

At the end of the October 16, 2017 hearing, the Chairman of the Board made a motion to approve the application, modified, apparently sua sponte, to a fourteen-story residential building with 121 units. The Board approved the application, as modified by the Chairman, memorializing its decision in a November 20, 2017 resolution.

Plaintiff filed a complaint in lieu of prerogative writs, asserting the Board's decision was arbitrary, capricious and unreasonable. On October 22, 2018, the trial court issued a comprehensive twenty-seven-page written decision and order vacating the Board's approval of the application. The court concluded that "the resolution as written and passed . . . granted relief far in excess of what was sought by [Berkeley], and that relief was granted arbitrarily, capriciously and unreasonably and without basis in the record."

In its decision, the court noted that the lengthy resolution failed to explain why the final application submitted by Berkeley did not meet the criteria for the required variances or why the Chairman's modified application did. The court

4

stated the resolution was "devoid of reasons why the Board determined that a reduction in floors and units to 14 and 121, meets the criteria, when 17 and 154 did not." Furthermore, the court noted: "[T]he entire resolution assumes, without basis in the record, that [Berkeley] will accept the reduction in stories, and a more than a twenty percent reduction in the number of units, but continue to abide by the representations made in furtherance of its application for [thirty-three] additional units."

The court observed that, although the Board did not specifically deny the requested variances, it "did in fact deny them de facto by proposing, apparently sua sponte, substantial modifications and granting variances, which on the face of the resolution, appear to be a significant reduction from those sought." Because the Board relied upon testimony presented in support of the application to both deny and grant the application as modified, without any explanation, the court was unable to "reasonably analyze what the resolution passed by the Board actually permits. . . ." Therefore, the court could not "determine whether the variances granted [were] inconsistent with the intent and purpose of the master plan and zoning ordinance."

On appeal, Berkeley argues: 1) the trial court failed to accord deference to the Board's determination; 2) the Board's analysis of the positive and negative

criteria for the "d" variances was not an abuse of discretion; 3) the court erred in not addressing the Board's analysis of the "c" variance prior to vacating the site's approval; and 4) the Board's omission of certain conditions in the resolution was not an abuse of discretion.

In reviewing a zoning board's decision, we are governed by the same standard used by the trial court. Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 433-34 (App. Div. 2009) (citing Cohen v. Bd. of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 614-15 (App. Div. 2007)). "Ordinarily, when a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). Therefore, a court "should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999).

"[T]he action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, . . . ." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 558 (2018) (alteration in original) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)).

A-1562-18T1

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, . . . or if it usurps power reserved to the municipal governing body or another duly authorized municipal official, . . . ." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted) (first citing Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998); then citing Leimann v. Bd. of Adjustment of Cranford, 9 N.J. 336, 340 (1952)).

A board's decision concerning a question of law "is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to the courts' regarding purely legal matters." Dunbar Homes, 233 N.J. at 559 (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

As we have explained, Berkeley sought to construct a seventeen-story building with 154 units. The governing ordinance required a residential building to be less than nine stories with a maximum of 64 units. Therefore, Berkeley's application sought use and bulk variances. To approve Berkeley's application, the Board had to grant the needed variances. And, in its resolution, the Board agreed the variances were required.

However, the Board did not grant the requested variances. Nor did it approve Berkeley's application. Instead, the Board approved a building of fourteen stories and 121 units – without any rationale provided as to why this number of stories and units met the criteria for variance relief or why Berkeley's proposed building did not. Moreover, the reduction in units was still double the number of units permitted on the property. Borough of Palisades Park Municipal Ordinance § 300-9.1(E)(1)(a).

In approving a substantially modified plan of its own devise, the Board did not grant the needed variances or approve Berkeley's application. To the contrary, its sua sponte, unsupported modification was a de facto denial of Berkeley's application. Without any explanation for its determination, we must conclude the Board's actions were arbitrary and capricious. Therefore, the approval of the modified application is vacated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1562-18T1